# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| John Ingram, | ) | |
| | ) | |
|     Plaintiff, | ) | Civil Action File No.: |
| | ) | |
| v. | ) | |
| | ) | |
| Experian Information Solutions, Inc. | ) | |
| and Nationwide Recovery Service, | ) | **COMPLAINT** |
| Inc., | ) | **WITH JURY TRIAL DEMAND** |
| | ) | |
|     Defendants. | ) | |
| | ) | |

## PRELIMINARY STATEMENT

This action for damages is based on Defendants' false reporting on Plaintiff's credit file and/or consumer reports, failures to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff, and failures to conduct reasonable reinvestigations with respect to such information.

## PARTIES

1. Plaintiff, John Ingram, is a natural person who resides in Volusia County, Florida.

2. Plaintiff is an individual and is therefore a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

1

3.     Plaintiff is allegedly obligated to pay a debt and is therefore a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

4.     Defendant, Experian Information Solutions, Inc. (hereinafter "Experian"), is a corporation formed under the laws of the State of Ohio, headquartered in the State of California, and registered to do business in the State of Georgia. Experian may be served with process via its registered agent, C T Corporation System, at 289 South Culver Street, Lawrenceville, Georgia 30046-4805.

5.     Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports. Accordingly, Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

6.     Defendant, Nationwide Recovery Service, Inc. (hereinafter "Nationwide"), is a corporation formed under the laws of the State of Tennessee. Nationwide may be served with process via its registered agent, National Registered Agents, Inc., at 800 South Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710.

7.     Nationwide regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions,

such as Plaintiff's transactions at issue in this lawsuit and described herein, and is therefore a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

8.      Nationwide uses interstate commerce and/or mail in its business. The principal purpose of Nationwide's business is the collection of consumer debts. Nationwide also regularly collects, or attempts to collect, directly, or indirectly, debts owed or due, or asserted to be owed or due, to a third party. Nationwide is therefore a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## JURISDICTION AND VENUE

9.      This Court has federal question jurisdiction over Plaintiff's Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, claims pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331. This Court's jurisdiction over Plaintiff's Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, claims likewise arises under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over Defendants because, *inter alia*, Defendants frequently and routinely conduct business in the State of Georgia, including the conduct complained of herein.

3

11.    Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims occurred in this district. Pursuant to LR 3.1B(3), NDGa, venue is proper in the Atlanta Division because one or more Defendants maintain agents for service of process within the Atlanta Division.

**<u>Factual Allegations Derived from Plaintiff's Bankruptcy Case</u>**

12.    On June 5, 2014, Plaintiff filed a Chapter 13 Voluntary Bankruptcy Petition in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, Case Number 14-61114 (the "Bankruptcy Case").

13.    On August 29, 2014, Plaintiff filed his Chapter 13 Plan setting forth his proposed treatment of his debts.

14.    On December 4, 2014, Plaintiff's Plan was confirmed. Plaintiff's creditors were served with copies of the Confirmation Order on December 6, 2014, by the Bankruptcy Noticing Center.

15.    On February 17, 2016, Plaintiff amended Schedule F of his Bankruptcy Petition to include Nationwide as a creditor holding unsecured claims (the "Debts").

4

16.    The Debts are primarily for personal, family, or household purposes and are therefore "debts" as that term is defined by 15 U.S.C. § 1692a(5).

17.    Following the schedule amendment, Nationwide was bound by the terms of the confirmed Chapter 13 Plan.

18.    The Bankruptcy Case is currently pending, Plaintiff continues to make his Plan payments and substantially perform per the terms of the Plan.

**Factual Allegations Pertinent to All Defendants**

19.    The reporting of consumer credit information, by credit reporting agencies ("CRAs") and data furnishers, is the foundation of credit risk scoring and impacts the financial lives of consumers in innumerable ways, including the availability and cost of credit, housing opportunities, leasing prospects, insurance availability and cost, utility service, and even employment.  Between two and three million consumer reports are issued by credit bureaus each day.  See, *http://www.cdiaonline.org/about.cfm*.

20.    The Consumer Data Industry Association ("CDIA") is an international trade association, representing over 140 members involved in credit reporting, mortgage reporting, check verification, tenant and employment screening, collection

5

services, and fraud verification services, and the CDIA is active in both federal and state legislative affairs, public relations, education, and the promulgation of industry standards.

21.   Because consumer credit reporting information is such sensitive data that has far reaching implications for most, if not all, consumers, the CDIA works together with CRAs to develop, maintain and enhance industry-standard reporting formats and guidelines.

22.   To further assist CRAs and data furnishers with performing their due diligence and reporting accurate, complete, and timely data, in satisfaction of the FCRA's legal requirements, the CDIA offers extensive training, education, and support to CRAs and data furnishers.

23.   The CDIA's extensive training and support offerings include FCRA certification programs for both CRAs and data furnishers, to assist each in maintaining compliance with FCRA regulations.

24.   Because standardized methods are of paramount importance to the accurate, complete and timely reporting of consumer credit data, the CDIA can and will revoke FCRA certification for failure to adhere to the standards set by the CDIA.

25.   In cooperation with the major CRAs, CDIA publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA. CDIA's reporting products are used in more than nine billion transactions each year.

See, *http://www.cdiaonline.org/about/index.cfm?unItemNumber=515*

26.   The Metro 2 Format Task Force is comprised of representatives from Equifax, Experian, Innovis, and TransUnion, and is supported by the CDIA.  Metro 2 Format Task Force's mission is to provide a standardized method for the reporting of accurate, complete and timely data, and has developed the Metro 2 standards.  *Id.*

27.   The Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit risk scoring.

28.   It is axiomatic that in the world of consumer credit information reporting, as long as a consumer credit account is open, every month some piece of information regarding that account/consumer is going to change.  For example, interest continues to accrue, payments are made, etc.

29.   Accordingly, and in furtherance of its mission, the Metro 2 Format Task Force has developed an industry standard for reporting consumer accounts that

7

"will ensure the integrity and consistency of the credit information being reported." As part of that industry standard the Metro 2 Format Task Force has declared, "All accounts must be reported on a monthly basis." (Emphasis added.) *Id.*

30.    Because consumer credit information changes monthly, failure to update that information on a monthly basis, yet still publishing reports containing the previously reported information without updates, means that the information being reported is almost certainly incomplete and inaccurate.

31.    The Fair Isaac Corporation credit risk scoring system, commonly referred to as FICO, is the leading credit scoring system, and utilizes data reported by credit reporting agencies and furnishers which are, ostensibly, in compliance with Metro 2 standards.

32.    At all times relevant hereto, Experian has required all entities to whom it grants consumer information reporting rights and access to adhere to the Metro 2 reporting guidelines as a condition of such ability and access.

33.    At all times relevant hereto Nationwide warranted and or represented to Experian that it had adopted and implemented the Metro 2 format for its reporting

of consumer data and would otherwise comply with Metro 2 and CDIA guidelines in its reporting of consumer information.

34.   Nationwide has, at all times relevant hereto, incorporated the Metro 2 format for reporting consumer information into its own internal policies and procedures.

35.   Defendants have actual knowledge that entities that perform credit risk scoring, and other functions utilizing the data reported by Defendants, assumes Defendants' compliance with Metro 2 standards.

36.   Nationwide deviated from the Metro 2 standards and its own policies and procedures in the reporting of the status of Plaintiff's debts thus providing false and misleading information to third-parties.

37.   At all times relevant hereto, Experian adopted and implemented the Metro 2 format for their reporting of consumer data and, as an integral aspect of its duties under the FCRA, is required to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

38.   At all times relevant hereto, Nationwide adopted and implemented the Metro 2 format for their reporting of consumer data and, as an integral aspect of its

duties under the FCRA, is required to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

39.     Experian, in conjunction with the other major credit reporting agencies, developed a browser-based software system that allows credit reporting agencies to electronically notify furnishers of disputed credit reporting and for furnishers to respond to such disputes following investigation. The system is commonly referred to as e-OSCAR and was designed to be Metro2 compliant. See, *http://www.e-oscar.org/*

40.     In order for information in consumer files and on consumer reports to be reported consistently and correctly, and with maximum possible accuracy, users of the e-Oscar system must comply with accepted Metro 2 standards.  Otherwise, the information contained in the resulting consumer reports is not consistent or uniform, and subject to gross misinterpretation by users of consumer reports.

41.     The failure on the part of a CRA and/or a furnisher to adhere to the accepted Metro 2 standards increases the probability of a reported item being false or materially misleading to users of consumer reports, as those users assume that the information in the consumer reports is being reported in compliance with Metro 2

standards for reporting consumer information, and thus interpret that information accordingly.

42.   The failure on the part of a CRA and/or a furnisher to adhere to the accepted Metro 2 standards can itself support a finding of willful violation as described by 15 U.S.C. § 1681n when that failure results in a report that is false, incomplete, and misleading.

43.   As a result, failure to adhere accepted Metro 2 standards in reporting information in consumer reports adversely affects consumer, as it causes inconsistent, misleading, and/or incorrect interpretation of information regarding consumers.

44.   Further, the failure to adhere to the Metro 2 format, and/or the failure to follow the guidance of regulatory and industry sources, such as the CDIA, is evidence of willfulness of an FCRA violation under 15 U.S.C. § 1681n(a).  See, Gillespie v. Equifax Info. *Servs., LLC*, No. 05C138, 2008 WL 4316950, at *8 (N.D. Ill. Sept. 15, 2008).

### Factual Allegations Derived from Reporting to and by Experian

45.    On or about May 5, 2016, Plaintiff obtained a copy of his consumer report as published by Experian.

46.    That report contained erroneous information as provided by Nationwide, and as published and reported by Experian.

47.    Specifically, the report shows the Debts as being in active collection, with past due amounts of $42.00 and $60.00.

48.    The relevant portion of the Nationwide tradelines appeared in the May 5, 2016, Experian report as follows:

| NATIONWIDE RECOVERY SERVICES 545 INMAN ST CLEVELAND TN 37311 Phone number (423) 472 4600 Partial account number 4561702 Address identification number 0064769537 Original creditor HARBIN CLINIC LLC | Date opened Dec 2012 First reported Nov 2013 Date of status Nov 2013 | Type Collection Terms 1 Months Monthly payment Not reported | Credit limit or original amount $42 High balance Not reported | Recent balance $42 as of Jul 2015 | Responsibility Individual Status Collection account. $42 past due as of Jul 2015. This account is scheduled to continue on record until Apr 2019. |
|---|---|---|---|---|---|
| NATIONWIDE RECOVERY SERVICES 545 INMAN ST CLEVELAND TN 37311 Phone number (423) 472 4600 Partial account number 5784836 Address identification number 0064769537 Original creditor HARBIN CLINIC LLC | Date opened Dec 2013 First reported Jan 2014 Date of status Feb 2014 | Type Collection Terms 1 Months Monthly payment Not reported | Credit limit or original amount $60 High balance Not reported | Recent balance $60 as of Jul 2015 | Responsibility Individual Status Collection account. $60 past due as of Jul 2015. This account is scheduled to continue on record until Apr 2020. |

(Remaining portions of tradelines omitted.)

49.    Because the Debts are included in Plaintiff's Bankruptcy Case, the information described above was both false and misleading.

50.    The specific reporting described above was factually inaccurate, and misleading, as it indicated that the Debts are in active collection, as opposed to included in Plaintiff's Bankruptcy, which precludes the active collection of the Debts.

51.    Further, the specific reporting described above was in derogation of accepted industry standards for reporting the account as set forth by the CDIA and Metro 2, and as adopted by the Defendants.  See e.g., 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2").

52.    In a letter dated September 6, 2016, Plaintiff disputed the inaccurate and misleading information directly to Experian and advised Experian that the Debts are included in his Bankruptcy Case, that the tradelines should reflect that the Debts are included in Plaintiff's Bankruptcy Case, and that the tradelines for the Debts should not be reporting any post-filing derogatory information. A true and correct copy of the relevant portion of the Plaintiff's dispute is reproduced below:

13

**Creditor/Address:** Nationwide Recovery Services, 545 Inman Street, Cleveland, Tennessee 37311
**Acct. No.:** 5784836XXXX

This account is included in my bankruptcy case referenced above and the "status" should be corrected accordingly. There should be no "past due" or "scheduled payment" amount showing and the last activity date on this account should be no greater than the bankruptcy filing date shown above.

**Creditor/Address:** Nationwide Recovery Services, 545 Inman Street, Cleveland, Tennessee 37311
**Acct. No.:** 4561702XXXX

This account is included in my bankruptcy case referenced above and the "status" should be corrected accordingly. There should be no "past due" or "scheduled payment" amount showing and the last activity date on this account should be no greater than the bankruptcy filing date shown above.

53.     Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify Nationwide of Plaintiff's dispute, and to conduct a reasonable reinvestigation and correct the tradeline or delete it from Plaintiff's file.

54.     Upon information and belief, Experian timely notified Nationwide of Plaintiff's dispute, via e-OSCAR or otherwise, as required by 15 U.S.C. § 1681i.

55.     Alternatively, Experian failed to notify Nationwide as required by 15 U.S.C. § 1681i.

56.     Pursuant to 15 U.S.C. § 1681s-2, Nationwide had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

57.     In a document dated December 30, 2016, Experian advised Plaintiff that it had researched Plaintiff's disputes and that the revised report reflected its findings. Experian provided a copy of the tradeline as reported, which reproduced the errors identified by Plaintiff in his original dispute letter.

58.     Specifically, the Nationwide tradelines appeared in the revised December 30, 2016, Experian report as follows:

| NATIONWIDE RECOVERY SERVICES | Date opened | Type | Credit limit or | Recent balance | Responsibility | |
|---|---|---|---|---|---|---|
| 545 INMAN ST | Dec 2012 | Collection | original amount | $42 as of Dec 2016 | Individual | |
| CLEVELAND TN 37311 | First reported | Terms | $43 | | Status | |
| Phone number | Nov 2013 | 1 Months | High balance | | Collection account. $42  past due as of Dec 2016. | |
| (423) 472 4600 | Date of status | Monthly | Not reported | | This account is scheduled to continue on record until Apr | |
| Partial account number | Dec 2013 | payment | | | 2019. | |
| 2522159 | | Not reported | | | | |
| Address identification number | | | | | | |
| 0064769537 | | | | | | |
| Original creditor HARBIN CLINIC | | | | | | |
| LLC | | | | | | |

| NATIONWIDE RECOVERY SERVICES | Date opened | Type | Credit limit or | Recent balance | Responsibility | |
|---|---|---|---|---|---|---|
| 545 INMAN ST | Dec 2013 | Collection | original amount | $60 as of Dec 2016 | Individual | |
| CLEVELAND TN 37311 | First reported | Terms | $60 | | Status | |
| Phone number | Jan 2014 | 1 Months | High balance | | Collection account. $60  past due as of Dec 2016. | |
| (423) 472 4600 | Date of status | Monthly | Not reported | | This account is scheduled to continue on record until Apr | |
| Partial account number | Feb 2014 | payment | | | 2020. | |
| 3584228 | | Not reported | | | | |
| Address identification number | | | | | | |
| 0064769537 | | | | | | |
| Original creditor HARBIN CLINIC | | | | | | |
| LLC | | | | | | |

15

59.    The tradelines for the Debts failed to state or otherwise disclose that the Debts were included in Plaintiff's Bankruptcy Case, and instead continued to show the debts as being in active collection.

60.    The post-investigation reporting of the Defendants is, independently and jointly, factually inaccurate, false, and misleading.

61.    The post-investigation reporting of the Defendants is, independently and jointly, in derogation of the Metro 2 reporting standards and that departure and failure to adhere to the adopted guidelines renders the reporting both false and materially misleading.

62.    There is no indication in the tradeline of the "verified" report that the Plaintiff has disputed the information reported and published by Experian and Nationwide.

63.    The failure to note Plaintiff's legitimate dispute regarding the reporting of the Debts renders the reporting both false and materially misleading.

64.    Accordingly, in a letter dated April 25, 2017, Plaintiff disputed the inaccurate and misleading information directly to Experian a second time, and again advised Experian that the Debts are included in his Bankruptcy Case, that the

tradelines should reflect that the Debts are included in his Bankruptcy Case, and that they should not be reporting any post-confirmation derogatory information. The relevant portion of the Plaintiff's dispute is reproduced below:

> The tradelines for Nationwide Recovery Services, 545 Inman Street, Cleveland, Tennessee 37311, account numbers 2522159 and 3584228, are included in my bankruptcy case, filed on June 5, 2014, case number 14-61114. I am including the notice documents from the court for your review. The "status" for the accounts should be corrected to reflect that fact. There should be no "past due" amounts showing and the last activity date on these accounts should be no greater than the date my chapter 13 plan was confirmed on December 4, 2014.

65. In support of Plaintiff's second dispute, and to assist Defendants' respective investigations, Plaintiff included with his second dispute the following documents: a copy of the mailing matrix from his Bankruptcy Case; and, a copy of the Amendment To Schedules filed in Plaintiff's Bankruptcy Case, showing Nationwide as an unsecured creditor whose claims were thus provided for and subject to the confirmed Chapter 13 Plan in Plaintiff's Bankruptcy.

66. Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify Nationwide of Plaintiff's second dispute, and to provide Nationwide with all relevant information regarding the dispute, which includes the documents supplied by Plaintiff.

67.    Pursuant to 15 U.S.C. § 1681i, Experian also had a duty to conduct a reasonable reinvestigation and correct the tradeline or delete it from Plaintiff's file.

68.    Upon information and belief, Experian timely notified Nationwide of Plaintiff's second dispute, via e-OSCAR or otherwise, as required by 15 U.S.C. § 1681i.

69.    Alternatively, Experian failed to notify Nationwide and to provide the supporting documents as required by 15 U.S.C. § 1681i.

70.    Pursuant to 15 U.S.C. § 1681s-2, Nationwide had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

71.    In a document dated May 25, 2017, Experian advised Plaintiff that it had researched Plaintiff's dispute and that the revised report reflected its findings. Experian provided a copy of the tradeline as reported, which reproduced the errors identified by Plaintiff in his original dispute letter.

72.    Specifically, the Nationwide tradelines appeared in the revised May 25, 2017 Experian report as follows:

| NATIONWIDE RECOVERY SERVICES<br>545 INMAN ST<br>CLEVELAND TN 37311<br>Phone number<br>(423) 472 4600<br>Partial account number<br>2522159<br>Address identification number<br>0064769537<br>Original creditor HARBIN CLINIC LLC | Date opened<br>Dec 2012<br>First reported<br>Nov 2013<br>Date of status<br>Dec 2013 | Type<br>Collection<br>Terms<br>1 Months<br>Monthly payment<br>Not reported | Credit limit or original amount<br>$43<br>High balance<br>Not reported | Recent balance<br>$42 as of Apr 2017 | Responsibility<br>Individual<br>Status<br>Collection account. $42  past due as of Apr 2017.<br>This account is scheduled to continue on record until Apr 2019. |
|---|---|---|---|---|---|
| NATIONWIDE RECOVERY SERVICES<br>545 INMAN ST<br>CLEVELAND TN 37311<br>Phone number<br>(423) 472 4600<br>Partial account number<br>3584228<br>Address identification number<br>0064769537<br>Original creditor HARBIN CLINIC LLC | Date opened<br>Dec 2013<br>First reported<br>Jan 2014<br>Date of status<br>Feb 2014 | Type<br>Collection<br>Terms<br>1 Months<br>Monthly payment<br>Not reported | Credit limit or original amount<br>$60<br>High balance<br>Not reported | Recent balance<br>$60 as of Apr 2017 | Responsibility<br>Individual<br>Status<br>Collection account. $60  past due as of Apr 2017.<br>This account is scheduled to continue on record until Apr 2020. |

73.    The tradelines for the Debts failed to state or otherwise disclose that the Debts were included in Plaintiff's Bankruptcy Case, and instead continued to show the debts as being in active collection.

74.    The post-investigation reporting of the Defendants is, independently and jointly, factually inaccurate, false, and misleading.

75.    Further, the post-investigation reporting of the Defendants is, independently and jointly, in derogation of the Metro 2 reporting standards and that departure and failure to adhere to the adopted guidelines renders the reporting both false and materially misleading.

19

76.   There is no indication in the tradeline of the "verified" report that the Plaintiff has disputed the information reported and published by Experian and Nationwide.

77.   The failure to note Plaintiff's legitimate dispute regarding the reporting of the Debts renders the reporting both false and materially misleading.

### Damages

78.   Defendants, independently and jointly, breached their duties as described herein.

79.   Defendants had actual notice that the information they were reporting regarding Plaintiff and the Debts was false, deceptive, and misleading.

80.   Defendants failed to correct their false, deceptive, and misleading reporting as described herein.

81.   Defendants continued to report the false, deceptive, and misleading information regarding Plaintiff and the Debts.

82.   Defendants had all the necessary information to investigate Plaintiff's disputes and make appropriate corrections, yet failed to do so.

83.   Accordingly, Defendants' conduct was willful.

84.   If Defendants had performed reasonable investigations of Plaintiff's disputes, the factually inaccurate, false, and misleading information would have been corrected.

85.   Upon information and belief, Experian regularly responds to consumers' disputes and issues reinvestigation reports without conducting a proper investigation, and/or without properly notifying the furnisher of the disputed information of the dispute.

83.   As such, Experian has evinced a pattern and practice of disregarding its statutorily mandated duties under the FCRA.

84.   Experian's pattern and practice of violating the FCRA indicates that Experian's actions and omissions complained of herein were willful.

86.   As a result of Defendants' willful actions and omissions, Plaintiff is eligible for statutory damages.

87.   Additionally, as a result of Defendants' actions and omissions, Plaintiff has suffered actual damages, including out-of-pocket expenses in challenging Defendants' wrongful representations regarding the Debts, as well as frustration, worry, and aggravation resulting from such false and misleading representations.

21

88.   As a result of the actions and omissions of Defendants, Plaintiff's actual damages also include the illegitimate suppression of his Fair Isaac Corporation ("FICO") credit score and other credit rating model scores.

89.   Defendants' failures to correct and clear the inaccuracies in Plaintiff's Experian report creates a material risk of financial harm to Plaintiff stemming from the decreased perception of Plaintiff's credit-worthiness.

## CAUSES OF ACTION

### COUNT I

**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. §§ 1681e(b) and 1681i**
**Experian Information Solutions, Inc.**

90.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

91.   Pursuant to 15 U.S.C. § 1681e(b), Experian is responsible for following reasonable procedures to assure maximum possible accuracy of information whenever it prepares consumer reports.

92.   Experian's duty under 15 U.S.C. § 1681e(b) extends to reinvestigation reports and consumer disclosures.

93.    Pursuant to 15 U.S.C. § 1681i(a)(1)(A), Experian had an affirmative duty to independently investigate the dispute submitted by Plaintiff.

94.    Pursuant to 15 U.S.C. § 1681i(a)(2), Experian was required to communicate the specifics of Plaintiff's dispute to Nationwide.

95.    A consumer reporting agency's reasonable reinvestigation must be a good faith effort to ascertain the truth; a reasonable reinvestigation must answer the substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

96.    In order to conduct a reasonable reinvestigation, and pursuant to 15 U.S.C. § 1681i(a)(4), Experian was required to review and consider all relevant information submitted by Plaintiff.

97.    Plaintiff's dispute was clear and unambiguous as to the inaccuracies of Experian's reporting.

98.    Plaintiff provided all the relevant information necessary for Experian to reinvestigate and correct the inaccuracies in its reporting.

99.    Experian breached its duties as described herein.

100. If Experian had conducted a reasonable reinvestigation of Plaintiff's dispute, Experian would have reviewed and considered all of the information Plaintiff submitted in his dispute letter, and would have easily detected that what was being reported was factually incorrect, inaccurate, and misleading.

101. If Experian had conducted a reasonable reinvestigation of Plaintiff's dispute, the tradeline on Plaintiff's Experian consumer report would have been appropriately corrected.

102. Due to Experian's failures to follow reasonable procedures to assure maximum possible accuracy of information, and failures to conduct a reasonable reinvestigation of Plaintiff's dispute, the false and misleading information in Plaintiff's credit file and on Plaintiff's Experian report was not appropriately modified.

103. Experian had all the information necessary to correct its reporting. Yet, Experian failed to correct the information in the face of clear evidence that its reporting was false and misleading. The failure indicates that Experian's review procedures were not reasonable.

104. The fact that Experian had all the information necessary to correct its reporting, yet failed to do so in an appropriate manner, further indicates that Experian

recklessly disregarded Plaintiff's dispute and the requirements of the FCRA, amounting to a willful violation of the statute.

105.  Experian willfully, or in the alternative negligently, violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of information concerning Plaintiff in his consumer reports, in reckless disregard of the statutory requirements, Plaintiff's dispute, and the publicly recorded Bankruptcy Case filings.

106.  Experian willfully, or in the alternative negligently, violated 15 U.S.C. § 1681i in multiple ways, including without limitation, by failing to conduct a reasonable reinvestigation of Plaintiff's dispute, and by failing thereafter to appropriately modify information in his file and on his consumer report in reckless disregard of the statutory requirements, Plaintiff's dispute, and the publicly recorded Bankruptcy Case filings.

107.  As a result of Experian's violations of 15 U.S.C. §§ 1681e(b) and 1681i, Plaintiff has suffered actual damages as described herein. Plaintiff is, therefore, entitled to recover actual damages from Experian pursuant to 15 U.S.C. §§ 1681n and 1681o.

108.  Experian's actions and omissions were willful, rendering Experian liable to Plaintiff for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

109.  Plaintiff is entitled to recover costs and attorneys' fees from Experian pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681s-2(b) Nationwide Recovery Service, Inc.

110.  Plaintiff incorporates by reference paragraphs 1 through 77 as though fully stated herein.

111. Pursuant to 15 U.S.C. § 1681s-2(a), Nationwide is responsible for providing accurate information whenever it furnishes information to any consumer reporting agencies.

112. Upon information and belief, Experian timely notified Nationwide of Plaintiff's disputes, and provided Nationwide with all the relevant information that Plaintiff had submitted.

26

113.  Pursuant to 15 U.S.C. § 1681s-2(b), Nationwide had a duty to investigate Plaintiff's dispute and accurately report its findings to Experian.

114.  A furnisher's investigation must be a good faith effort to ascertain the truth; a reasonable investigation must answer the substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

115.  In order to conduct a reasonable investigation, and pursuant to 15 U.S.C. § 1681s-2(b), Nationwide was required to review and consider all relevant information submitted by Plaintiff to Experian.

116.  Plaintiff's disputes were clear and unambiguous as to the inaccuracies of reporting the Debts as in collections, with past due balances of $42.00 and $60.00.

117.  Nationwide breached its duties as described herein.

118.  If Nationwide had conducted a reasonable investigation of Plaintiff's dispute, Nationwide would have reviewed and considered all of the information Plaintiff submitted to Experian in his dispute, and would have easily detected that what was being reported was factually incorrect, inaccurate, and misleading.

27

119.  If Nationwide had conducted a reasonable investigation of Plaintiff's dispute, the tradeline on Plaintiff's consumer reports would have been corrected accordingly.

120.  Due to Nationwide's failures to provide accurate information, and failures to conduct reasonable investigations of Plaintiff's dispute, the false and misleading information in Plaintiff's credit file and on Plaintiff's reports as described herein was not appropriately modified.

121.  Nationwide had all the information necessary to correct its reporting. Yet, Nationwide failed to suitably correct its reporting in the face of clear evidence that it was false and misleading. The failure indicates that Nationwide's review procedures were not reasonable.

122.  The fact that Nationwide had all the information necessary to correct its reporting, yet failed to appropriately do so, further indicates that Nationwide recklessly disregarded Plaintiff's dispute and the requirements of the FCRA, amounting to a willful violation of the statute.

123.  Nationwide willfully, or in the alternative negligently, violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation upon receiving notice of

Plaintiff's disputes from Experian; by failing to appropriately report the results of its investigation; and by failing to appropriately modify the disputed information, in reckless disregard of the statutory requirements; Plaintiff's disputes, and the publicly recorded Bankruptcy Case filings.

124. As a result of Nationwide's violations of 15 U.S.C. § 1681s-2(b), Plaintiff has suffered actual damages as stated herein. Plaintiff is, therefore, entitled to recover actual damages from Nationwide under 15 U.S.C. §§ 1681n and 1681o.

125. Nationwide's actions and omissions were willful, rendering Nationwide liable to Plaintiff for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

126. Plaintiff is entitled to recover costs and attorneys' fees from Nationwide pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT III

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10) Nationwide Recovery Service, Inc.

127. Plaintiff incorporates by reference paragraphs 1 through 77 as though fully stated herein.

128. Nationwide's provision of false and/or misleading information in connection with its attempts to collect the alleged debt violated multiple provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10).

129. As a result of Nationwide's violations of the FDCPA, Plaintiff has suffered actual damages. Plaintiff is therefore entitled to recover actual damages under 15 U.S.C. § 1692k.

130. Under 15 U.S.C. § 1692k, Plaintiff is also entitled to recover from Nationwide $1,000 in statutory damages and reasonable attorney's fees and costs.

## COUNT IV

### VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
### O.C.G.A. § 10-1-393(a)
### Nationwide Recovery Service, Inc.

131. Plaintiff incorporates by reference paragraphs 1 through 77 and 115 through 118 as though fully stated herein.

132. O.C.G.A. § 10-1-393(a) broadly prohibits unfair business practices.

133.  It was unfair and deceptive for Nationwide to falsely report the status of Plaintiff's account to third-parties in an effort to collect debts that were scheduled in bankruptcy.

134.  As pled above, Plaintiff was harmed by Nationwide's unfair conduct.

135.  Upon information and belief, Nationwide regularly reports information to credit reporting agencies in an effort to collect outstanding debts.

136.  Upon information and belief, reports to credit reporting agencies are Nationwide's *modus operandi* for debt collection and are done on a wide scale.

137.  Nationwide's conduct amounts to an unfair business practice.

138.  Nationwide's conduct has implications for the consuming public in general and potential negative impact on the consumer marketplace.

139.  Nationwide does not maintain a place of business in Georgia and has no assets in Georgia, thus relieving Plaintiff of the Notice and Demand requirement of O.C.G.A. § 10-1-399(b).

140.  As a result of Nationwide's violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover general damages pursuant to O.C.G.A. § 10-1-399(a).

141.  As a result of Nationwide's willful and wanton violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover exemplary damages pursuant to O.C.G.A. § 10-1-399(a).

142. Nationwide's actions were intentional, rendering it liable for treble damages pursuant to O.C.G.A. § 10-1-399(c).

143.  Plaintiff is entitled to recover reasonable attorney's fees and expenses pursuant to O.C.G.A. § 10-1-399(d).

144. Furthermore, because Nationwide has acted in bad faith, been stubbornly litigious, and/or caused Plaintiff unnecessary trouble and expense, Plaintiff is also entitled to an award of reasonable attorney's fees and expenses pursuant to O.C.G.A. § 13-6-11.

## TRIAL BY JURY

145.  Plaintiff is entitled to and hereby requests a trial by jury.

**WHEREFORE**, Plaintiff prays that judgment be entered in his favor and against Defendants, jointly and severally, for:

a.) Plaintiff's actual damages;

b.) Punitive and/or statutory damages pursuant to 15 U.S.C. § 1681n;

c.) General, exemplary, and treble damages pursuant to O.C.G.A. §§ 10-1-399(a) & (c);

d.) Reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n and/or 1681o and 1692k and O.C.G.A. §§ 10-1-399(d) and/or 13-6-11;

e.) Statutory damages against Nationwide pursuant to 15 U.S.C. § 1692k; and

f.) Such other and further relief as may be just and proper.

Respectfully submitted this 27th day of June, 2017.

BERRY & ASSOCIATES

*/s/ Matthew T. Berry*
Matthew T. Berry
Georgia Bar No.: 055663
*matt@mattberry.com*
Paul J. Sieg
Georgia Bar No.: 334182
*psieg@mattberry.com*
2751 Buford Highway, Suite 600
Atlanta, GA 30324
Ph. (404) 235-3334
Fax (404) 235-3333

*Plaintiff's Attorneys*

33